UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-588-MOC-WCM

| SHELBY EDWARD TYDINGS, | ) | |
| --- | --- | --- |
| | ) | |
| **Plaintiff, pro se,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLIED UNIVERSAL, INC., et al., | ) | **ORDER** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants under Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure. (Doc. No. 5). For the following reasons, the Court grants the motion.

I.  FACTUAL BACKGROUND

Plaintiff Shelby Edward Tydings filed this action pro se on November 1, 2021, alleging federal question jurisdiction based on the First and Fourth Amendments of the United States Constitution, 18 U.S.C. § 242 "Deprivation of rights under color of law-trespass, False Arrest and Obstruction of Justice, Use of Excessive Force/kidnapping." (Doc. No. 1, p. 3).

Plaintiff alleges that on March 19, 2021, he went to the back gate of the Charlotte Area Transit Authority to video record the trains and public employees in the course of their duties. (Id., p. 6). Plaintiff contends that after he began recording, a security officer identified by Plaintiff as "Officer Johnson" exited her vehicle and instructed Plaintiff not to record her car. (Id.). The officer then asked Plaintiff for his name, which Plaintiff ignored. (Id.). Plaintiff continued recording inside the gates, allegedly for a story he was "considering doing based on the results that [COVID-19] was having on the LINKS system." (Id.). Officer Johnson then

1

radioed an unidentified individual, while Plaintiff continued recording her. (Id.). Plaintiff alleges Officer Johnson told the unidentified individual that Plaintiff was still recording her vehicle and refused to answer her questions. (Id.). She also stated Plaintiff was approaching her vehicle. (Id.). Plaintiff alleges he was fifteen feet from the vehicle. (Id.).

Plaintiff alleges he walked closer to the gate at 3305 Pelton Street, at which time Officer Johnson told Plaintiff he could record but asked him to back away from the gate. (Id.). Plaintiff alleges that a Charlotte Police Department officer identified as Officer Womble arrived, and asked him for identification, which Plaintiff did not produce. (Id.). Instead, Plaintiff asked Officer Womble if he was required to show his identification. (Id.). Officer Womble informed Plaintiff his recording appeared strange and suspicious. (Id.). Plaintiff alleges that Defendants Chauncey Payne and Jamey Vancil arrived shortly after Officer Womble. (Id.). Defendant Payne asked Officer Womble if Plaintiff had provided his own identification yet, and Officer Womble informed them Plaintiff was uncooperative. (Id.).

Defendant Payne informed Plaintiff he was trespassing on CATS property. (Id.). Plaintiff alleges he told Defendants he was on public property and covered by the First Amendment. (Id.). Defendants then received a call instructing that Plaintiff be removed. (Id.). Plaintiff then began walking to the street to leave, but Defendant Payne blocked his path. (Id.). Defendants Payne and Vancil then restrained and handcuffed him. (Id.). Defendant Payne removed Plaintiff's wallet to see his identification. (Id.). Plaintiff contends he experienced severe pain from this restraint as Defendants Vancil and Payne led him towards Defendant Payne's vehicle, and that paramedics transported him to the hospital. (Id. at 7).

Plaintiff was transported to the Mecklenburg County Jail and was released later the same evening. (Id. at 2). Sergeant B. Campa gave Plaintiff a form, stating he "was trespassed from

CATS property for six months for recording without permission." (Id.).

Plaintiff subsequently filed this action, alleging violations of the First and Fourth Amendments of the United States Constitution. Specifically, Plaintiff alleges that "employees of Allied Universal under orders from SGT Alexander, Payne, and Vancil violated [his] right to record matters of public interest" and his "right to gather information about what public officials do on public property." (Id.). Plaintiff makes a claim for "false arrest and obstruction of justice as employees of Allied Universal under orders from SGT Alexander, Payne stated under oath that I refused to leave the property when he told me to do so." (Id.). Plaintiff's Complaint does not indicate whether his claim arises under the Constitution or state law, or when any alleged statement "under oath" was made.

Finally, Plaintiff claims his Fourth Amendment rights were violated by (1) "employees of Allied Universal under orders from SGT Alexander, Payne and Vancil" preventing him "from leaving the property while telling [him] to do so in violation of the 4th amendment [sic] right to be secure in [his] person"; (2) by Defendant Payne removing his wallet and identification from his pocket without his consent in violation of his "right to be secure papers [sic] and effects"; and 3) by Defendant Payne removing him "against [his] will from the spot where [he] was towards his company vehicle in violation of the 4th amendment [sic]. Kidnapping." (Id.).

While it is not entirely clear what relief Plaintiff is claiming, it appears he is potentially seeking a declaratory judgment for alleged violations of the First and Fourth Amendments of the Constitution. The Complaint requests a "[r]uling on the "1st amendment right to record in public areas of public buildings and on publicly owned property and grounds unrestricted by gates, fences or signage," as well as a "[r]uling on the 1st amendment right to record public officials and employees in the course of their duties." (Id. at 4). Plaintiff also seeks a "ruling on the 4th

3

amendment [sic] right to be secure from violations by private companies contracted to government agencies." (Id.). For damages, Plaintiff demands "75,000 punitive, exemplary damages for psychological and physical damages" from Defendant Allied Universal; "$50,000 punitive damages each" from Defendants Payne and Vancil for "psychological and physical damages caused by their illegal actions;" and "$75,000 punitive damages from SGT Alexander for psychological and physical damages caused by his ordering Payne and Vancil to violate [Plaintiff's] 1st and 4th amendment [sic] rights." (Id. at 5).

## II.    FACTUAL BACKGROUND

On February 15, 2022, Defendants filed the pending motion to dismiss for insufficient process and insufficient service of process, pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. (Doc. No. 5). Plaintiff filed a Response on February 28, 2022, (Doc. No. 9), Defendants filed a Reply on March 7, 2022, (Doc. No. 10), and Plaintiff filed a Surreply on March 18, 2022, (Doc. No. 11).

## III.   DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must prove by a preponderance of the evidence that the court's personal jurisdiction over a defendant is proper. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Without process or service of process, there is no Rule 12(b)(2) personal jurisdiction.

Under Rule 4 of the Federal Rules of Civil Procedure, a plaintiff in federal court must serve the complaint, together with a summons, on each defendant (unless the defendants waive service). See FED. R. CIV. P. 4(c). If he fails to make service within 90 days of filing the complaint and fails to show good cause for the delay, the court must either dismiss the action or order the plaintiff to make service within a specified time. See FED. R. CIV. P. 4(m). Plaintiff

4

bears the burden of establishing that service of process has been accomplished in a manner that complies with Rule 4. See Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996).

Here, Rule 4(h)(1) of the Federal Rules of Civil Procedure required Plaintiff to serve the Summons and Complaint on Defendant Allied either (1) "in the manner prescribed by Rule 4(e)(1) for serving an individual," or (2) "by delivering [the Summons and Complaint] ... to an officer, a managing or general agent, or any other agent authorized by appointment or statute to receive service of process." FED. R. CIV. P. 4(h)(1). Under North Carolina law, service may be affected on a corporation, partnership, or association "by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to [an] officer, director or agent." N.C. R. CIV. P. 4(j)(6)(c) (emphasis added).

Rule 4(e) provides the following methods for serving an individual:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Personal service upon an individual defendant under North Carolina law is set forth at N.C.G.S. 1A-1, 4(j)(1), as described above (as well as certain delivery service or mail options).

Here, Plaintiff did not serve any of the Defendants pursuant to the methods prescribed by Rule 4. (Doc. No. 1-2, p. 1–8). First, Plaintiff attempted to serve the Defendant named as "Allied Universal" and all individual Defendants, only by mailing a copy of the Summons and Complaint to "Allied Universal." (Doc. No. 1-2, p. 1, Aff. of Danny Carr, p. 1). The Summons and Complaint were not directed to any officer, director, or agent of the company, but rather just to "Allied Universal," which is not the legal name of the corporate entity defendant. (Id. at 1, Aff. of Danny Carr, Def. Ex. 2). The attempted service on the defendant named as "Allied Universal" was deficient as a matter of law. El v. Max Daetwyler Corp., 2011 WL 1769805, at *8 (W.D.N.C. May 9, 2011) aff'd, 451 Fed. Appx. 257 (4th Cir. Oct. 20, 2011) (complaint dismissed for failure to serve summons on an "officer, director, or managing agent").

Second, Plaintiff impermissibly attempted to serve all Defendants by sending the Summonses to the business address for the security company. (Doc. No. 1-2, Aff. of Danny Carr, p. 1). Attempting service on individual Defendants at their alleged workplace does not constitute proper service of process, as service of process cannot be lawfully effectuated upon a defendant at his or her place of work by an individual who is unauthorized to accept service of process for defendant. Elkins v. Broome, 213 F.R.D. 273, 276 (M.D.N.C. 2003); see also Tart v. Hudgins, 58 F.R.D. 116, 117 (M.D.N.C. 1972) (delivering summons and complaint to the defendant's wife at his place of business rather than 'his dwelling house or usual place of abode' not proper service).

Moreover, Defendants assert that, at the time of the purported service, Defendant Vancil was no longer even employed at Defendant Allied Universal and would not have received, and in fact did not receive, the Complaint mailed to that address. (Aff. of Jamey Vancil, p. 1). Defendants state that, likewise, Defendant Alexander was no longer a full-time employee and did

6

not actively work at Allied when the Complaint was allegedly served. (Aff. of Matthew Alexander, p. 1). Additionally, the Summons purportedly served on "Sgt Alexander" does not identify this individual's full legal name, but only refers to him as "Sgt Alexander." Defendant asserts that, just as with Defendant Vancil, neither Defendant Alexander nor Payne received the Complaint mailed to Defendant Allied's purported business address. (Aff. of Chauncey Payne, p. 1; Aff. of Matthew Alexander, p. 1). Finally, Plaintiff filed no proof of service with this Court alleging that service was proper as to any of the Defendants. (Id.).

In response to Defendant's motion to dismiss, Plaintiff has not rebutted Defendant's assertions and affidavits showing that Plaintiff failed to properly serve Defendants. Thus, Plaintiff has failed his burden of showing proper service in this case. This Court therefore lacks jurisdiction over all individual Defendants, and this case will be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss, (Doc. No. 5), is **GRANTED**.

2. This matter is dismissed without prejudice.

Signed: April 14, 2022

Max O. Cogburn Jr
United States District Judge

7